SECOND ECCLESIASTICAL SOCIETY OF HARTFORD
ET AL. *v.* ATTORNEY GENERAL

MALTBIE, C. J., BROWN, JENNINGS, ELLS and WYNNE, JS.

Argued May 15—decided June 12, 1946

*James E. Rhodes, 2d,* for the plaintiffs.

*Thomas J. Conroy,* assistant attorney general, with whom, on the brief, was *William L. Hadden,* attorney general, for the defendant.

Ells, J.  The present trustees under the will of William Stanley are limited in the investment of trust funds to "good and sufficient Bonds and Mortgages of Real Estate of double the value of the amount invested."  They have brought this suit in equity asking that the Superior Court empower them to invest their funds in such securities and mortgages as are permitted by the provisions of the General Statutes relating to the investment of trust funds.  The beneficiary of the trust estate is

a coplaintiff. The attorney general was made defendant by virtue of the provisions of § 149 of the General Statutes, which directs him to represent the public interest in the protection of gifts, legacies or devises intended for public or charitable purposes. The gist of his brief is that the prayer of the plaintiffs should be granted. The parties filed a written stipulation of facts, and the Superior Court reserved the case to this court for its advice.

William Stanley of Hartford died testate in 1786. The title to his real estate became vested, in 1795, in the plaintiff, the Second or South Ecclesiastical Society of Hartford, subject to the terms of the devise made in the will. Stanley had therein provided that the management of the property should be vested in three trustees and their successors, that they should rent the real estate for periods not to exceed thirty years and apply the proceeds to the use and benefit of the society, and that the land should never be sold. The trustees observed these conditions until 1852, when in a memorial to the General Assembly they asked permission to sell the property and invest the proceeds for the benefit of the society. They represented that the property had become unproductive and that the intention of the testator to provide funds for the society had been rendered nugatory. The General Assembly authorized them to sell the property and invest the proceeds in "good and sufficient Bonds and Mortgages of Real Estate of double the value of the amount invested."

The heirs of William Stanley challenged the power of the legislature to act upon the petition. Suit was brought in the federal courts, apparently because of a diversity of citizenship, and the Supreme Court of the United States held that the General

Assembly had the requisite power. *Stanley* v. *Colt,* 5 Wall. (72 U.S.) 119, 18 L. Ed. 502. Thereafter, the authority conferred by the resolution was exercised by the trustees. They now seek a further modification and enlargement of their powers of investment. It has been stipulated that because of the present lack of demand for mortgages of only one-half the value of the property it has now become practically impossible for the trustees to invest the trust funds in anything but government bonds and savings bank deposits paying a low rate of interest, and that it would be for the benefit of the society if the trustees were allowed to invest the funds in such securities as are permitted by our statutes relating to the investment of trust funds.

The first question upon which our advice is sought is whether the Superior Court has power to modify the provision for investment imposed by the act of the legislature; or, to put the issue in another form, whether the plaintiffs must ask the legislature for further modification. In *Bridgeport Public Library* v. *Burroughs Home,* 85 Conn. 309, 82 A. 582, we discussed at length *Colt* v. *Stanley,* supra, and said (p. 318) that the Supreme Court of the United States, speaking in 1866, was fully justified in deciding that the legislature had power to pass the resolution in question, but that *Norwalk Street Ry. Co's Appeal,* 69 Conn. 576, 37 A. 1080, 38 A. 708, which over-ruled our earlier cases on this subject, removed the basis of the decision in *Colt* v. *Stanley,* and that thereafter the only authority competent to confer such power was a court of equity, when properly invoked. After discussing the division of power under the constitution, we said (p. 320) : "It is certain . . . that jurisdiction over this charitable trust, to see that it is properly and beneficially adminis-

tered, that the purpose of the donor does not fail, and that the interests of the beneficiaries be subserved, under changing conditions and with the lapse of time, belongs to the judicial department of the government, and is in no respect an incident of the legislative." As this power is now exclusively in the judicial department, we see no sound reason why, in a proper case, the courts cannot modify a provision for the investment of the funds of a trust estate, whether that provision was made by the legislature or by the will of a donor. The situation now presented is quite analogous to a case where the court is asked, upon proper facts, to modify a provision it had previously made. It follows that the Superior Court under proper circumstances has power to modify the provision for investment.

The remaining question is whether the facts agreed upon reasonably require that the trustees be given authority to invest their funds in such securities as are permitted by our statutes relating to the investment of trust funds, thus substituting this provision for one which required them to invest only in mortgages of double the value of the amount invested. The dominant purpose of the testator was to provide funds for the religious and charitable uses of the society. That he expressed an intent that the property should not be sold is now of no concern to us. It has been sold, pursuant to proper authorization. The question before us relates only to the investment of funds. At present the only legal investment that can be made is in mortgages of the designated kind. Because of the present lack of demand for such mortgages such an investment has become practically impossible, and thus the dominant intent of the testator has been frustrated. "It is now certain that the Superior Court, as a

court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed." *Newton* v. *Healy,* 100 Conn. 5, 10, 122 A. 654. It is not required that the accomplishment of the intent of the testator in the way he planned shall be impossible; proof of the proper facts may be held to constitute an impracticability within the doctrine of approximation. *Seymour* v. *Attorney General,* 124 Conn. 490, 498, 200 A. 815. The facts in the instant case state a practical impossibility. The legislative act of 1852 put an end to the requirement in the will that the property be held in perpetuum by the society and that the benefit the testator intended it to receive be from rents secured under leases given by the trustees. To grant the prayer of the plaintiffs will not defeat the intent of the testator as to the means by which his dominant purpose of benefiting the society is to be accomplished, because that result has already come about by reason of the legislative act. The intent of the testator, as modified by that act, can be served only by the substitution of a method of investment which will be safe and which will provide funds for the intended purpose. The proposed modification, investment in such securities and mortgages as are permitted by the provisions of the General Statutes relating to the investment of trust funds, will fully satisfy the dominant purpose of the donor, and if the modification is not authorized the purpose which the trust is meant to accomplish will be defeated. See *Russell* v. *Russell,* 109 Conn. 187, 197, 145 A. 648; Restatement, 1 Trusts, § 167 (1).

*Rogers* v. *English,* 130 Conn. 332, 33 A.2d 540, is factually distinguishable. The will there under consideration directed that the trustees should invest certain funds in mortgages on real estate in New England with double security for the amount loaned. The trustees sought a judgment that they be given power to make such investments as are legal for trustees. We held that the stipulated facts did not present a situation which justified granting this permission, in that it did not appear that there was any real difficulty in securing such mortgages. On the other hand, it did appear that the trustees were finding enough mortgages of the designated type and that the percentage of yield was satisfactory. The facts in the instant case are to the contrary.

To both questions, we answer, "Yes."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.