The Charlotte Hungerford Hospital v. Harold Mulvey, Attorney General, et al.

Superior Court      Litchfield County      File No. 19026

Memorandum filed October 28, 1966

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*John K. Jepson,* assistant attorney general, for the named defendant.

*Joseph J. Gallicchio,* corporation counsel, for defendant city of Torrington.

MacDonald, J. The plaintiff in this action for a declaratory judgment is a nonstock corporation which for many years has owned and operated a voluntary general hospital in a complex of buildings located on a 120-acre tract of wooded land about one mile from the center of the city of Torrington. The land was acquired under a deed of trust providing that the premises thus conveyed "are to be held and used by said grantee for the purpose of maintaining and carrying on a general hospital and, if a majority of corporators so elect, a training school for nurses in connection therewith may be established, and for no other purpose whatsoever." The deed of trust in question, executed in 1917,

specifically provided that "if the land herein granted shall cease to be used for the purposes aforesaid . . . title . . . shall thereupon pass to and vest in said town of Torrington . . . to be used forever as a public park." The special act of the General Assembly of Connecticut under which plaintiff was organized in 1917 provides, inter alia, that it shall receive said tract of land "to hold the same subject to all the terms, conditions, restrictions and provisions of said deed and for the purpose of carrying out the trust created by said deed, namely, maintaining and supporting a hospital to be known as The Charlotte Hungerford Hospital." 17 Spec. Laws 758.

Plaintiff, the largest general hospital in Litchfield County, has an active medical staff of about forty practicing physicians and surgeons, including specialists as well as general practitioners, and much of their working time is spent on the hospital premises. Because of the size of the hospital grounds and the rather remote location of the main hospital buildings, the establishment of a medical office building on the hospital grounds would be of great convenience and advantage both to the individual doctors and to the hospital, enabling the doctors to spend their office hours in close proximity to the hospital, with its readily available facilities, and providing the hospital with an ever-present staff, almost instantly available when needed.

Although most of the doctors involved heartily support such an undertaking and plaintiff is desirous of constructing and operating a medical office building through the medium of a subsidiary corporation wholly owned and controlled by plaintiff, various questions have arisen with respect to the right, power and authority of plaintiff, under the terms of said deed of trust and special act, to pro-

ceed with such a project, i.e. the construction and operation, on its premises, of a medical office building for members of its staff who would pay rent for such offices to the subsidiary corporation, with any ultimate profit inuring wholly to the benefit of the hospital itself. The specific questions which the court is requested to answer, in its decree, are (a) whether plaintiff is authorized and empowered, either directly or through the medium of a subsidiary stock corporation or other entity wholly owned by plaintiff, to construct and operate, as an integral part of its general hospital complex, a medical office building for members of its medical staff; (b) whether such a medical office building may, under the terms of the aforesaid deed of trust, be located on a portion of the land held by plaintiff thereunder; (c) whether, if said program is carried out through the medium of a subsidiary stock corporation or other entity wholly owned by plaintiff, the plaintiff is authorized and empowered to lease to said subsidiary or other entity, for use as a site for said medical office building, a portion of the land included in the aforesaid deed of trust; (d) whether, in addition to offices and office suites for members of plaintiff's medical staff, said building may contain facilities related to or supporting such offices and suites, such as medical laboratories, pharmacies and dispensaries.

The court, after hearing the evidence and the arguments of counsel with full participation by counsel representing the only interested parties, namely, the attorney general of the state of Connecticut, as representative of the public interest in the protection of trusts for charitable uses and purposes pursuant to § 3-125 of the General Statutes, and the city of Torrington, contingent beneficiary, has no hesitation in answering all four of the ques-

tions posed in the affirmative. It is clear from the testimony of Mr. Nicklas, the plaintiff's executive director, and Dr. Atwood, president of the plaintiff's medical staff, that the proposed project would materially aid plaintiff in more efficiently carrying out the stated purposes of the trust deed under which it was founded, namely, "maintaining and carrying on a general hospital." It is equally clear from the extremely impressive testimony of Dr. Hamilton, executive director of Hartford Hospital and president of the American Hospital Association, and Clarence Rufus Rorer, a nationally known authority on hospital administration and financing, that the modern trend is almost universally toward the practice of having nonprofit hospitals provide physicians' private offices for rental to staff members, either in the hospital buildings themselves or on the hospital grounds. In an exhibit introduced by Rorer are listed over 100 such hospitals, including Hartford, Presbyterian (of New York), Massachusetts General (of Boston), Pennsylvania (of Philadelphia), California (of Los Angeles), St. Francis (of San Francisco), and many others equally well known.

The language of the deed of trust is to be construed in the light of the settlor's purpose. 2 Scott, Trusts (2d Ed.), p. 1157. And reasonable deviations and expanded interpretations must be made from time to time in order to keep pace with changes in recognized concepts of the proper sphere of general hospital operations. See *Matter of Stuart,* 183 Misc. 20 (N.Y.); *Matter of Hastings,* 17 Misc. 2d 368 (N.Y.); *Magee Estate,* 1 Pa. D. & C.2d 447; Bogert, Trusts and Trustees (2d Ed.) § 394. Such deviations are recognized by our Connecticut courts even though the elements for applying cy pres principles are not present. *Colonial Trust Co.* v.

*Brown,* 105 Conn. 261, 284-86; *Williams Memorial Institute* v. *Beers,* 18 Conn. Sup. 512.

A decree may enter advising plaintiff of its rights, powers and authority herein by answering the four questions propounded in the affirmative and allowing out of the trust estate to the plaintiff the sum of $1250 in counsel fees plus costs and disbursements in connection with this action.